No. 84-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

RONALD LEE RATY,

        Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Allen Beck, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana
Charles Bradley, Deputy County Atty., Billings

Submitted on Briefs: Oct. 25, 1984

Decided: December 13, 1984

Filed: DEC 13 1984

Ethel M. Harrison
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Ronald Lee Raty appeals from a judgment of conviction for aggravated assault, in the Thirteenth Judicial District Court in Yellowstone County. We affirm in part and reverse in part.

Raty was charged with two counts of aggravated assault stemming from separate incidents. He was accused of stabbing Covina Fredericks on April 28, 1983 and of assaulting Janet LaRance in her home on September 8, 1983 and strangling her with a rope. Trial by jury was held on January 25 through 27, 1984 in Yellowstone County and Raty was acquitted of the Frederick's knifing but convicted of assaulting LaRance.

The evidence presented at trial showed that on September 8, 1983, Raty appeared at the home of Janet LaRance and rang the doorbell. When LaRance opened the door Raty entered, chased her through the house, cornered her, then strangled her with a rope for 10 or 20 seconds. Raty then released his victim and fled. LaRance ran outside and asked two construction workers for help telling them she had been attacked. One of the construction workers chased Raty and caught him a couple blocks from the scene while Raty was entering his parked car. Meanwhile LaRance called the police. Raty was taken into custody.

Raty testified at trial that he went to the LaRance home thinking that a woman who owed him twenty dollars was inside. The woman slammed the door on his foot; he batted the door open and entered the house. Raty did not remember using the rope, but thought that he put his arm around her neck and his hand over her mouth.

At trial defendant Raty put into issue his state of mind at the time of the crime. He introduced evidence aimed at showing that he did not possess the requisite mental elements of "purposely" or "knowingly" which must be proven by the State to obtain a conviction for aggravated assault. Defendant showed that he came from a deprived background. He had been abused as a child, beaten by his stepfather and watched his mother carted off to a mental hospital. Dr. Tranel, a Billings psychologist, testified that the defendant suffered from psychomotor epilepsy which caused an organic personality disorder and marked behavior changes.

In accord with section 46-14-201, MCA, though section 46-14-212, MCA, defendant notified the State of his intention to rely on the mental disease or defect defense. Raty was examined by a clinical team at Warm Springs State Hospital. Dr. Harris testified at trial that in his opinion the defendant was capable of standing trial and had a passive-aggressive personality. He testified that the defendant had possible epilepsy by history only and had a low I.Q. Harris also testified that the defendant had the capacity to have the particular state of mind which is an element of the offense charged. See section 46-14-213, MCA.

Ronald Lee Raty was convicted of violation of section 45-5-202, MCA, aggravated assault, and sentenced to the maximum term of 20 years in the state prison. He was also sentenced to 10 years to be served concurrently for the use of a dangerous weapon, a rope, pursuant to section 46-18-221, MCA.

Appellant raises the following issues:

(1) Whether the evidence was sufficient to prove to element of purpose or knowledge?

- 3 -

(2) Whether the defendant should have been sentenced to a term of years at the State Mental Hospital rather than the Montana State Prison due to diminished mental capacity?

We note that the defendant does not challenge the constitutionality of Montana's statutes which abolished the traditional insanity defense. Our recent decision in State v. Korell (Mont. 1984), ___ P.2d ___, 41 St.Rep. 2141, held the statutes, sections 46-14-201, MCA, et seq., are not unconstitutional. Korell is the law in Montana today and in its light we must affirm the conviction by the lower court.

There is sufficient evidence on the record to support the jury finding that the defendant acted knowingly and/or purposely when he assaulted Ms. LaRance.

"Purposely" is defined as follows:

"[A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result . . ." Section 45-2-101(58), MCA.

"Knowingly" is defined as follows:

"[A] person acts knowingly with respect to conduct or to circumstance described by a statute defining an offense where he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct . . ." Section 45-2-101(33), MCA.

Raty remembered the details of the entire incident except using the rope on LaRance. He testified he thought LaRance was a girl named Patty and that he wanted to get her because she owed him $20.00. Raty remembers running away and being chased by the construction workers. Raty stated that he was running because he was chasing someone else. This testimony tends to show that Raty was aware of his conduct. He could remember his conduct. He tried to conceal his

- 4 -

reason for fleeing which tended to prove he knew he had done something wrong. State v. Pierce (Mont. 1982), 647 P.2d 847, 39 St.Rep. 1205.

The evidence also shows that Raty acted purposefully. His conduct was not the result of reflex. Evidence that Raty possessed the rope prior to entering the LaRance home and evidence that Raty intended harm to the woman he thought owed him money tend to prove that it was his conscious object to engage in the conduct of strangling LaRance. Dr. Harris' testimony tended to show the defendant possessed the mental elements of the offense despite the existence of psychomotor epilepsy.

Based on the evidence presented at trial the jury had sufficient grounds to find the defendant guilty of aggravated assault beyond a reasonable doubt. We will not disturb that finding on appeal.

SENTENCING

The appellant contends that he should have been sentenced to a term of years at Warm Springs State Hospital instead of sentenced to prison. The disposition of a defendant who raised the lack of mental state defense is set forth in Chapter 14, Part 3 of the Montana Code Annotated. If the jury finds that the defendant had the requisite state of mind at the time of the offense, criminal guilt is determined. After guilt has been established, the court, not the jury, must determine if the guilty person was suffering at the time of the offense from a mental disease or defect. Section 46-14-311, MCA. The following procedure is followed. The sentencing judge <u>must</u> consider any relevant evidence presented at trial plus any additional evidence presented at the sentencing hearing to determine whether the defendant was

- 5 -

able to appreciate the criminality of his acts or to conform his conduct to the requirements of the law at the time he committed the offense for which he was convicted. Section 46-14-311, MCA; Corell, supra. If the defendant is found mentally ill under the above test, he is sentenced to the care of the director of institutions for a definite period of time not to exceed the maximum possible sentence. Section 46-14-312(2), MCA. If the defendant is cured from the mental disease or defect which rendered him incapable of appreciating the criminality of his act or conforming his conduct to the requirements of the law he is then transferred from the State Hospital to prison to serve out the remainder of his sentence. While in the care and custody of the mental health professionals at Warm Springs, the mentally ill convict receives no credit for good time served and is not eligible for parole.

There is no advantage for one not in need of care for a mental disease or defect to request to be sentenced under section 46-14-312(2), MCA, to the care of the Department of Institutions instead of to prison.

The defendant, Raty, asked the court to be sentenced to Warm Springs. The District Court was required to make a finding pursuant to section 46-14-311, MCA, whether or not the defendant at the time of the commission of the offense for which he was convicted was suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

The court made no such finding. The reasons stated at the sentencing hearing and in the sentencing order for

imposing a 20-year prison sentence on the defendant were as follows:

> "1)    The Court considered the information in the presentence investigation report.
>
> "2)    The defendant has been acquitted by a jury of one of the counts previously charged against him; and the Court takes that into consideration.
>
> "3)    The Court considered the reality of this case and that the defendant comes from a very deprived background as a child and was abused as a child and the Court is sympathetic toward the defendant because of that situation.
>
> "4)    The Court also realizes that this defendant has developed into a person whom the Court deems to be a danger in the community by reason of the acts he had committed and for which the jury found him guilty."

The record shows that the District Court did not fulfil its duty to independently evaluate the defendant's mental condition.  See Korell, supra, State v. Watson (Mont. 1984), ___ P.2d ___, 41 St.Rep. 1452.

For this reason we must vacate the sentence and remand for resentencing.

Affirmed in part.

Reversed in part.

_____
                        Justice

We Concur:

_____
Chief Justice

- 7 -

Daniel J Shea
Justices

- 8 -