FILED

05/05/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0378

DA 24-0378

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 93

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOSHUA WILLIAM MYERS-STARKS,

       Defendant and Appellant,

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-23-324(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Tammy A. Hinderman, Appellate Defender Division Administrator,
Charlotte Lawson, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

              Travis Ahner, Flathead County Attorney, Larissa Malloy, Deputy
County Attorney, Kalispell, Montana

                    Submitted on Briefs:  February 18, 2026

                              Decided:  May 5, 2026

Filed:

_____
                       Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Joshua William Myers-Starks appeals his April 2024 judgment and sentence in the Montana Eleventh Judicial District Court, Flathead County. He argues that the court erred in not ordering any mental examination and failing to independently evaluate his mental condition under §§ 46-14-311 and -312, MCA, as requested at sentencing. He also claims ineffective assistance of trial counsel. We do not reach all of Myers-Starks' assertions because we hold that one of these issues is dispositive:

> *Whether the District Court abused its discretion by failing to evaluate Myers-Starks' mental condition at the time of the offense under §§ 46-14-311 and -312, MCA, as requested at sentencing.*

We reverse and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 On October 17, 2023, Myers-Starks had a physical altercation with a police officer who responded to the Kalispell Warming Center, a homeless shelter, to trespass Myers-Starks from the property. Staff called to report that Myers-Starks refused their requests to leave after he lit papers on fire outside the building. The responding officer, thinking Myers-Starks was re-entering the building after being ordered to leave, used force to stop him, which resulted in Myers-Starks headbutting and punching the officer. The State originally charged Myers-Starks with assault on a peace officer based on events alleged to have occurred on October 17, 2023, but later amended the charges to one count assault on a peace officer, serious bodily injury, or alternatively, one count assault on a peace officer, bodily injury, in violation of § 45-5-210(1)(a) and (d), MCA.

2

¶3     In the December 2023 omnibus memorandum, defense counsel indicated that Myers-Starks was not "mentally incompetent" and would not rely on "a defense of mental disease or defect at the time of the offense." Defense counsel did, however, indicate that he planned to seek leave to amend the omnibus memorandum "once fitness has been determined." The record indicates that counsel never moved to make any such amendment.

¶4     At a pretrial conference in January 2024, the State advised the court of a concurrently pending criminal matter involving Myers-Starks in which court-appointed counsel there sought an order for a fitness-to-proceed evaluation.[1] Myers-Starks' appointed counsel for these proceedings had not yet sought any similar evaluation, and the hearing record indicates that he had no plan to seek one at that time. The State also did not formally ask for an evaluation. Having only limited interaction with Myers-Starks at that point, the court declined to order an evaluation sua sponte but said that either party could bring a motion. Neither party did.

¶5     At his jury trial, Myers-Starks was very disruptive. At times, the court observed him throwing a cup and a pen. When the arresting officer was testifying, Myers-Starks yelled profanities at the witness from the defense table, forcing the court to recess and then threaten to remove him from trial for remote viewing. The jury found Myers-Starks guilty of assault on a peace officer, bodily injury, and acquitted him on the serious bodily injury variant.

---

[1] The State apparently later dismissed that proceeding so Myers-Starks was not evaluated.

¶6    Prior to sentencing, Myers-Starks submitted to an independent psychological evaluation, which his counsel later said he arranged based on Myers-Starks' unusual outbursts at trial. The psychologist's report was filed with the court the day before sentencing. The examining psychologist diagnosed Myers-Starks with schizophrenia and higher-functioning autism-spectrum disorder. After watching camera footage of the Warming Center incident, the psychologist opined that, because of his mental condition, Myers-Starks was likely to respond poorly and in socially inappropriate and provocative ways to the officer's escalating demands. The psychologist ultimately recommended that the court consider alternative sentencing to Montana Department of Public Health and Human Services (MDPHHS) custody for treatment.

¶7    Consistent with the omnibus reservation, the defense raised the issue of Myers-Starks' mental condition at sentencing after obtaining the psychological evaluation. Based on the psychologist's diagnoses and recommendation, and Myers-Starks' unusual conduct, which the court had personally witnessed,[2] defense counsel asked the District Court to consider a disposition under the mental-disease sentencing framework and requested placement with MDPHHS. The prosecutor stated she had brought up the issue of Myers-Starks' mental condition "repeatedly" prior to trial, but that defense counsel had not formally noticed the issue, choosing instead to raise it at sentencing out of apparent "convenience." The prosecutor also did not think the court could sentence to MDPHHS

---

[2] At sentencing, Myers-Starks' conduct was like at his trial—he continuously interrupted his counsel, the prosecutor, the court, and the arresting officer victim-witness. The prosecutor even noted that Myers-Starks had threatened to kill someone at the Montana State Hospital during the presentence investigation.

4

custody without prior department recommendation. Defense therefore asked, in the alternative, for continuance to permit a formal evaluation under §§ 46-14-311 and -312, MCA. To wit:

> I think that if the court sends him anywhere, I think it should be to the state hospital. I think we have an evaluation supporting that. We have an evaluation recommending that it should be considered under § 46-14-312. I did that as soon as this verdict came back. I got Dr. River on the case; I filed this evaluation as soon as I got it. And . . . we are moving sentencing along, and that's clear, and I think that the court should not sentence him today. I think we should order the Department of Health and Human Services to look at the appropriateness of a DPHHS sentence.
>
> And that doesn't give us finality today and we got to come back and we got to do this again, but I think that's appropriate. I think given the evaluation we have in front of us from Dr. River saying that's a good idea—from what we've all seen in this courtroom, from what happened at the prior jury trial . . . . We had another attorney [in another matter] who raised fitness, and [Myers-Starks] was actually on his way to the state hospital, except the State then dismissed that other case.
>
> So this has been dancing around in different forms and I know that [the] county attorney is not happy with me because I didn't argue mental health at trial and I'm arguing it at sentencing, . . . [b]ut, if it's the only way we can do it, that's the way I'm going to do it. Because at some point it needs to come up and it needs to be said because that is something that is present here. And I think we all know it's present here.

¶8 At that point the issue of Myers-Starks' mental condition was squarely before the court. The District Court agreed that Myers-Starks had a "mental illness." Nevertheless, without considering alternate sentencing under §§ 46-14-311 and -312, MCA, the court followed the prosecutor's recommendation and sentenced Myers-Starks to ten years at the Montana State Prison (MSP). Myers-Starks timely appealed.

¶9 As stated above, though he raises numerous issues on appeal, we hold that the District Court's failure to consider Myers-Starks' mental condition at the time of his

5

offense was error. We therefore remand for the court to conduct the required analysis under §§ 46-14-311 and -312, MCA, in accordance with this Opinion.

## STANDARD OF REVIEW

¶10 We review a district court's application of the statutory sentencing framework under §§ 46-14-311 and -312, MCA, to determine whether the court complied with those statutory requirements. A sentencing court abuses its discretion when it fails to apply the correct legal standards or when the record does not reflect that the court considered the statutory factors required by law. *State v. Coburn*, 2018 MT 246, ¶ 16, 393 Mont. 73, 428 P.3d 243; *State v. Barrus*, 2025 MT 183, ¶ 30, 423 Mont. 391, 573 P.3d 1188. A sentencing court therefore abuses its discretion "if the record fails to demonstrate that the court fulfilled its obligation to independently evaluate the defendant's mental condition" under §§ 46-14-311 and -312, MCA. *Barrus*, ¶ 30; *State v. Korell*, 213 Mont. 316, 333, 338-39, 690 P.2d 992, 1001, 1004 (1984). We will not disturb a district court's conclusion regarding a defendant's mental disease or disorder unless the conclusion is unsupported by the record. *Coburn*, ¶ 19.

## DISCUSSION

¶11 *Whether the District Court abused its discretion by failing to evaluate Myers-Starks' mental condition at the time of the offense under §§ 46-14-311 and -312, MCA, as requested at sentencing.*

¶12 Myers-Starks contends the District Court found that he suffered from a "mental illness" but then did not consider whether his "mental illness" rendered him unable, at the time of the offense, to appreciate the criminality of his conduct or conform his conduct to the law. Myers-Starks says the court therefore abused its discretion in sentencing him to a

6

term of imprisonment instead of MDPHHS custody without performing the required statutory analysis under §§ 46-14-311 and -312, MCA.[3] We agree.

¶13 Evidence of the defendant's mental condition is relevant at three stages of proceedings: (1) in assessing his fitness to stand trial;[4] (2) if offered by the defense to negate the State's proof of the mental state element of the charged offense;[5] and (3) at sentencing, whenever "put in issue," to assess the defendant's "fitness for penal punishment."[6] *Korell*, 213 Mont. at 322-24, 333, 338-39, 690 P.2d at 996-97, 1001, 1004; *State v. Watson*, 211 Mont. 401, 410-11, 417, 686 P.2d 879, 884-85, 888 (1984); *State v. Sandrock*, 2004 MT 195, ¶ 30, 322 Mont. 231, 95 P.3d 153; *State v. Kepler*, 2024 MT 173, ¶¶ 17, 20, 417 Mont. 421, 554 P.3d 138 ("a defendant's mental disease or disorder may be considered at all critical stages of a criminal proceeding: pretrial, trial, and sentencing"); *accord* § 46-14-101(1), MCA.

¶14 Each inquiry—fitness to proceed, a mental-disease defense, and capacity to appreciate the criminality of conduct/conform conduct to the law—requires separate and distinct proof.[7] The inquiry on "fitness to proceed" is, if the defendant suffers from a

---

[3] The State does not directly confront this argument and, instead, argues only that Myers-Starks' counsel was not constitutionally ineffective because the court "impliedly" found that Myers-Starks did not qualify for alternate sentencing and so there was no prejudice.

[4] Sections 46-14-221, -222, MCA; *see also* §§ 46-14-101, -103, -202, -204, -205, -206, MCA.

[5] Sections 46-14-102, -213, -214, -217, -301, MCA.

[6] Sections 46-14-311, -312, MCA; *see also* § 46-14-101(1)(b), MCA.

[7] And, under §§ 46-14-202 and -206, MCA, each inquiry requires a mental examination specific to its purposes. For example, a "fitness to proceed" examination, if ordered, may only ascertain the defendant's capacity to understand the charges/proceedings and participate in his defense.

mental disease or disorder or developmental disability, "whether the defendant has the capacity to understand the proceedings against [him] and to assist in [his] own defense." Sections 46-14-221(1)(d)(iii), -206(1)(c), MCA; *accord* § 46-14-101(1)(a)(i). Where that question is raised—by any party or the court—the court must appoint a health professional to conduct a fitness examination pursuant to §§ 46-14-202 and -206, MCA. If, after examination, the health professional answers the fitness question in the negative, criminal proceedings are suspended pending the defendant's "regain[ing] fitness to proceed." Sections 46-14-103, -202, -221(2)(a), -222, -223, MCA. The "fitness to proceed" inquiry does not ascertain whether the defendant appreciates the criminality of his conduct or could conform it to the law at the time of the offense—that specific inquiry is reserved for sentencing under §§ 46-14-311 and -312, MCA. *Watson*, 211 Mont. at 410, 686 P.2d at 884 ("the former concept of inability to appreciate the criminality or to conform conduct to the requirements of law is now contained only in the sentencing statute," § 46-14-311, MCA).

---

Sections 46-14-202(3), -206(1) MCA. The examining health professional may only opine on the defendant's ability to form the requisite mental state, appreciate the criminality of his conduct, or conform his conduct to the law under specific, enumerated circumstances. Sections 46-14-202(3), 206(2)(a)-(b), MCA. Also, the court may only order examination by the Montana State Hospital under § 46-14-202 in limited circumstances; otherwise, the court appoints a private health professional "to examine and report upon the defendant's mental condition." Section 46-14-202(1), (2)(a), (6), MCA. Conversely, § 46-14-311(2), MCA, specifically requires that, "if requested" at the sentencing phase, a PSI "must include a mental evaluation by a person appointed by the director of [MDPHHS] or the director's designee" opining "as to whether the defendant suffered from a mental disease or disorder or developmental disability with the effect as described in" § 46-14-311(1), MCA.

8

¶15 Similarly, the mental-disease "defense" pertains only to the adjudication of guilt or innocence, where evidence of the defendant's mental condition may be offered to negate the State's proof that the defendant had the requisite mental state for the offense. Sections 46-14-101(1)(a)(ii), -102, -213, -214, -217, -301, MCA.[8] When a defendant asserts a mental-disease defense theory, the jury determines whether, due to a mental disease or disorder, the defendant did or did not have a particular state of mind that is an essential element of the charged offense. Sections 46-14-101(1)(a)(ii), -102, -301, MCA. The jury can either find that the defendant had the requisite mental state for the offense, or, because of his mental condition, could not form the requisite mental state. *See Kepler*, ¶¶ 17, 20 (distinguishing between defendants adjudicated "not guilty but mentally ill" and those adjudicated guilty but later found to be mentally ill and entitled to alternative sentencing under §§ 46-14-311 and -312). We have cautioned that adjudication of the ability to form the mental state for an offense is distinct from the effect of the defendant's mental condition at the sentencing phase. *Barrus*, ¶ 27 (§ 46-14-311 "establishes a post-conviction inquiry distinct from the question of mens rea during the guilt/innocence phase of trial"; this "statutory distinction" between legal culpability and capacity to appreciate criminality of conduct "must be preserved"); *accord Korell*, 212 Mont. at 338-39, 692 P.2d at 1004 ("deferring to a jury verdict" in the § 46-14-311 inquiry "indicates a misunderstanding of the distinct roles of the jury and court").

---

[8] The defense generally must notice its intent to rely on a mental disease or disorder defense within 10 days of receiving a "report of the defendant's mental condition," "or at a later time as the court may for good cause permit." Section 46-15-323(3), MCA.

9

¶16     Finally, the inquiry at the sentencing phase—distinct from "fitness to proceed" and adjudication of guilt—is whether the defendant's mental condition entitles him to alternate sentencing to MDPHHS custody for treatment. Sections 46-14-311 and -312, MCA, apply to defendants who have been adjudicated guilty of the charged offense, but, due to a "mental disease or disorder"[9] or "developmental disability,"[10] lacked capacity at the time they committed the offense for which they were convicted to appreciate the criminality of their conduct or conform their conduct to the law. *Barrus*, ¶ 27 (§ 46-14-311's purpose "is to account for the diminished capacity of individuals who, although legally culpable, lacked the mental and emotional faculties to fully grasp the criminality of their behavior"); *Kepler*, ¶¶ 17, 20 (§§ 46-14-311 and -312 address "guilty but mentally ill defendants"). Distinct from a mental-state adjudication, the § 46-14-311(1) inquiry requires courts, not juries, to evaluate "whether the defendant understood what he was doing was wrong under the law." *Barrus*, ¶ 27; *Watson*, 211 Mont. at 417-18, 686 P.2d at 888.

¶17     "To properly consider a defendant's mental condition" at the sentencing phase "the sentencing court must order a presentence investigation report, including a mental

---

[9] A mental disease or disorder means "an organic, mental, or emotional disorder that is manifested by a substantial disturbance in behavior, feeling, thinking, or judgment to such an extent that the person requires care, treatment, and rehabilitation," with certain exceptions. Section 46-14-101(2), MCA.

[10] A "developmental disability," distinct from a "mental disease or disorder," means "a disability that is attributable to intellectual disability, cerebral palsy, epilepsy, autism, or any other neurologically disabling condition closely related to intellectual disability; requires treatment similar to that required by intellectually disabled individuals; originated before the individual attained age 18; has continued or can be expected to continue indefinitely; and results in the person having a substantial disability." Sections 46-14-101(2)(b)(ii), 53-20-102(9), MCA.

10

evaluation by DPHHS-appointed personnel with an opinion as to whether the defendant suffered from a mental disease or disorder or a developmental disability." *Barrus*, ¶ 28 (citing *Coburn*, ¶ 18); § 46-14-311(1)-(2), MCA. The court must consider the evaluation in addition to "any relevant evidence it considers necessary to determine if the mental disease or defect rendered the defendant unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law." *Barrus*, ¶ 28. Ultimately, the defendant bears the burden to establish entitlement to alternate sentencing under §§ 46-14-311 and -312, MCA. *Coburn*, ¶ 19; *State v. Gallmeier*, 2009 MT 68, ¶¶ 12-20, 349 Mont. 424, 203 P.3d 852.[11]

¶18 To determine whether the defendant has made that showing, "the sentencing court bears a fundamental duty to independently evaluate the defendant's mental condition and the record must reflect the court's deliberative process." *Barrus*, ¶ 28 (citing *Coburn*, ¶ 18 (citing *Korell*, 213 Mont. at 338-39, 690 P.2d at 1004)). This is because the existence of a mental disease or disorder that rendered the defendant unable to appreciate the criminality of his conduct or conform his conduct to the law is *the* deciding factor in whether the defendant is sentenced under Title 46, chapter 18, MCA, or to MDPHHS custody for appropriate treatment and placement. Section 46-14-312(1)-(2), MCA; *see also State v. Rathburn*, 2003 MT 210, ¶ 11, 317 Mont. 66, 75 P.3d 334 ("courts are required to consider a defendant's mental condition, in part, to better determine the appropriate commitment

---

[11] *See also Watson*, 211 Mont. at 417-19, 686 P.2d at 887-88 (§ 46-14-311 "requires more than just a finding of mental disease").

regime and to avoid cruel and unusual punishment" (citing *Korell*)).[12]  When the issue of a defendant's mental disease or defect is properly raised, the sentencing court must independently determine whether the defendant's mental condition satisfies the criteria of § 46-14-311(1), MCA, before imposing sentence.

¶19    In *Coburn*, the defendant pleaded guilty pursuant to a plea agreement and then argued at sentencing that he should be sent to MDPHHS custody in lieu of prison and independently obtained an expert evaluation to support that argument.  Upon receipt of the defense expert's opinion, the State asked for a PSI to include an MDPHHS evaluation pursuant to § 46-14-311(2), MCA, which the court subsequently ordered.  *Coburn*, ¶ 7. At the sentencing hearing 90 days later, the court considered each examining expert's testimony and concluded that Coburn's mental illness did not render him unable to appreciate the criminality of his conduct or conform his conduct to the law at the time of the offense.  Therefore, the court sentenced him to MSP pursuant to § 46-14-312(1), MCA. We affirmed the court's sentencing decision because it had "followed the proper procedures to investigate Coburn's mental condition, as required by" § 46-14-311, MCA, including ordering a PSI/mental evaluation, independently considering the evidence, and rendering a decision "explain[ing] its deliberative process."  *Coburn*, ¶¶ 18, 24-25.

---

[12] In *Korell*, we considered a constitutional challenge to the newly-enacted legislative scheme eliminating an "insanity defense" and providing instead for consideration of the defendant's mental condition at the three distinct phases described above.  We held, as pertinent, that the "problems of cruel and unusual punishment of the insane are to be avoided" so long as the sentencing judge "faithfully discharge[s] the review duties of Sections 46-14-311 and 46-14-312, MCA" because those statutes "serve to prevent imposition of cruel and unusual punishment upon the insane."  *Korell*, 213 Mont. at 333, 338-39, 690 P.2d at 1001, 1004.

¶20     Similarly, in *State v. Long*, 223 Mont. 502, 726 P.2d 1364 (1986),[13] the defendant was examined and diagnosed with progressive dementia after trial and sentencing. We held that, under § 46-14-311, MCA, this diagnosis was "clearly relevant and warrant[ted] attention, especially as it relate[d] to [the] defendant's sentence." We remanded for consideration of the effects of the defendant's diagnosis and alternate sentencing if required. *Long*, 223 Mont. at 512-14, 726 P.2d at 1371. While *Long* was decided under an older version of § 46-14-311, MCA,[14] it illustrates that a defendant's mental condition might not become an issue until late in proceedings, in which case it must be addressed under §§ 46-14-311 and -312, MCA, to ensure the constitutional protections those statutes embody. *Accord Rathburn*, ¶ 11; *Korell*, 213 Mont. at 333, 338-39, 690 P.2d at 1001, 1004.

¶21     The State argues that § 46-14-311(1), MCA, was not triggered here because Myers-Starks did not assert at the omnibus hearing that a mental disease or defect prevented him from appreciating the criminality of his conduct or conforming his conduct to the requirements of law. Myers-Starks, however, did not conclusively waive the issue in the omnibus memorandum. Defense counsel expressly noted on the form that the

---

[13] *Overruled in part on other grounds by Whitlow v. State*, 2008 MT 140, ¶¶ 13 n.2, 20, 343 Mont. 90, 183 P.3d 861.

[14] In 2009, the Legislature amended § 46-14-311 to require a mental evaluation prior to imposition of sentence, so that a sentencing court had the requisite information necessary to decide whether the defendant's mental condition entitled him to alternate sentencing *before* sentencing him to MDPHHS custody. The Legislature also added a requirement that the defendant "claim" his mental disease or disorder rendered him incapable of appreciating the criminality of his conduct or comporting his conduct to the law at omnibus or pleading. 2009 Mont. Laws ch. 268.

defense reserved the right to file "a motion to amend the omnibus form once fitness has been determined." This notation signaled to the State and the District Court that the defense could not yet determine whether to assert a mental-disease claim until a mental evaluation occurred. The reservation therefore preserved the possibility that Myers-Starks would raise the issue later if an evaluation revealed a qualifying mental condition.

¶22 The next month, at a pretrial conference, the State called the court's attention to the fact that defense counsel had not yet requested any mental examination, even though court-appointed counsel representing Myers-Starks in another contemporaneous proceeding had asked for and received court approval for a fitness-to-proceed evaluation. Because our resolution of the sentencing issue requires remand, we do not decide whether the District Court erred by declining to order a fitness-to-proceed evaluation under § 46-14-202(1), MCA. The record nevertheless reflects that concerns regarding Myers-Starks' mental condition were raised before trial and persisted throughout the proceedings.

¶23 The issue of Myers-Starks' mental condition became even more apparent at his jury trial, where Myers-Starks disrupted proceedings by throwing objects and yelling profanities at the arresting officer while he was testifying. Based on Myers-Starks' unusual and erratic trial conduct, his counsel obtained an independent psychological evaluation to investigate his mental condition.

¶24 By the time of sentencing, the issue had crystallized. The court and the State were aware of the examining psychologist's diagnoses of schizophrenia and autism-spectrum disorder; his opinion, based on footage of the Warming Center altercation, that

14

Myers-Starks' mental condition affected his ability to appreciate the criminality of his conduct and conform his conduct to the law; and his recommendation that the court consider the statutory mental-disease sentencing provisions. Based on the results of the psychological examination, Myers-Starks' counsel requested alternate sentencing or, at a minimum, postponement for MDPHHS evaluation and recommendation. Because Myers-Starks raised the issue at sentencing, the court was required to address it under §§ 46-14-311 and -312, MCA.

¶25 When the issue of a defendant's mental condition is properly raised, the sentencing court must determine whether the criteria of § 46-14-311(1), MCA, are satisfied and must render a decision reflecting its deliberative process before imposing sentence. Here, the omnibus reservation, Myers-Starks' conduct in court, the psychologist's diagnoses and opinion, the State's notice that another judge in a separate matter had ordered a fitness-to-proceed evaluation, defense counsel's request, and the court's implicit finding that Myers-Starks suffered from a "mental illness" all implicated §§ 46-14-311 and -312, MCA. Nevertheless, the District Court imposed a prison sentence without determining whether the statutory criteria of § 46-14-311(1), MCA, were satisfied and without addressing the procedures contemplated by § 46-14-312, MCA. This was an abuse of discretion. We do not decide whether the psychologist's findings ultimately satisfy § 46-14-311(1) or whether Myers-Starks ultimately can establish that he suffered from a qualifying mental disease or disorder or developmental disability at the time of the offense. We hold only that the District Court erred by failing to consider that question under §§ 46-14-311 and -312, MCA.

¶26 On remand, the District Court shall determine in the first instance whether Myers-Starks satisfies the criteria of § 46-14-311(1), MCA. The court is not required to rely solely on Myers-Starks' psychological evaluation and, if necessary, may order an evaluation and presentence investigation consistent with §§ 46-14-311(2) and -312, MCA. *See Coburn*, ¶¶ 7, 18, 24-25. After making the findings required by the statutes, the District Court shall resentence Myers-Starks accordingly. If the court determines that the statutory criteria are satisfied, it shall consider the alternative sentencing provisions of §§ 46-14-311 and -312, MCA.

## CONCLUSION

¶27 The District Court abused its discretion by imposing sentence without first determining whether Myers-Starks satisfied the criteria of § 46-14-311(1), MCA, and without conducting the analysis required by §§ 46-14-311 and -312, MCA. We therefore remand for further proceedings consistent with those statutes and this Opinion.

¶28 Reversed and remanded.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

Chief Justice Cory J. Swanson, specially concurring.

¶29 I agree it was error to sentence Myers-Starks without a full determination of whether he was mentally ill, able to appreciate the criminality of his conduct, and conform his

16

actions to the law. I differ with the Court in assigning the blame. A mental illness defense is just that, a defense that must be asserted by the defendant through counsel. It is an informed decision left entirely up to the defendant. It is not up to the judge to divine whether a defendant is actually asserting such a defense, or to sua sponte consider it when it has not been properly presented. In this regard, it differs from the question of a defendant's mental fitness to proceed to trial, which the statute permits the defense counsel, prosecutor, or judge to raise at any point in the proceedings. Section 46-14-202(1), MCA.[1]

¶30 Here, the defense attorney was ineffective as counsel because he failed to understand Montana's law and failed to advocate on behalf of his client. A defense counsel is ineffective if (1) his performance was deficient, and (2) the deficient performance prejudiced the defendant. The defendant must show by preponderance of the evidence that both elements are satisfied. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069 (1984); *State v. Valenzuela*, 2021 MT 244, ¶ 29, 405 Mont. 409, 495 P.3d 1061. Deficient performance does not just mean an after-the-fact examination finds other or better ways the attorney may have represented the accused. Attorneys are afforded a broad range of professional decisions, conduct, methods of trial advocacy, and argument, that do not fall below the standards of performance, even if in hindsight they were in error. In this

---

[1] Set aside for another day the statutory disincentive for defense counsel to raise fitness as an issue because they will then have to pay for the evaluation, § 46-14-202(5), MCA, and our speedy trial caselaw where we punish the party who raises fitness by attributing delay to them. *State v. McGregor*, 2013 MT 297, ¶ 35, 372 Mont. 142, 311 P.3d 428 (90-day evaluation delay attributed to the defendant because he requested a mental health evaluation); *State v. LaGree*, 2007 MT 65, ¶ 20, 336 Mont. 375, 154 P.3d 615 (same); *State v. Allery*, 2023 MT 25, ¶ 35, 411 Mont. 219, 523 P.3d 1088 (criticizing attribution of time spent treating the defendant for fitness as State institutional delay when there is nothing the State could do to expedite the treatment) (Rice, J., dissenting).

case, we must scrutinize the alleged deficient performance to ensure we identify a substantial likelihood of a different outcome if the attorney's conduct had not been deficient. *State v. Polak*, 2021 MT 307, ¶ 29, 406 Mont 421, 499 P.3d 565. Finally, we must determine whether an allegation of ineffective assistance is record-based and can be pursued on direct appeal, or whether it is not record-based and can be asserted through post-conviction relief proceedings. *State v. Lindberg*, 2008 MT 389, ¶¶ 39–42, 347 Mont. 76, 196 P.3d 1252. Here, I would hold defense counsel's conduct was deficient, it was prejudicial toward the defendant, and we can determine this from the record on appeal.

¶31 First, the defense counsel's representation was deficient because he failed to understand the requirement of Montana law to address his client's mental illness and how to navigate the criminal prosecution in a manner to protect his client's rights. Failure to know a fundamental procedural and substantive legal defense for your client is problematic; failure to conduct even rudimentary research to arm yourself is deficient. "'An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.'" *State v. Walter*, 2018 MT 292, ¶ 15, 395 Mont. 390, 431 P.3d 22 (quoting *Hinton v. Alabama*, 572 U.S. 263, 274, 134 S. Ct. 1081, 1089 (2014)).

¶32 The deficiency began all the way back at the Omnibus hearing. That hearing is designed to "expedite the procedures leading up to the trial of the defendant." Section 46-13-110(2), MCA. The Omnibus Memorandum and Order constitute a record of matters settled at the hearing and give the court a preview of motions, defenses, and

other matters that may be raised pre-trial. Section 46-13-110(3)–(4), MCA. Generally, a party's failure to raise a defense or objection constitutes a waiver. But a court "for cause shown, may grant relief from any waiver." Section 46-13-101(2)–(3), MCA.[2]

¶33 Defense counsel reserved a motion to amend the Omnibus Memo—presumably to assert mental illness defenses or mitigations—"once fitness has been determined." But fitness was never determined in the other case and was never raised in this case. The defense attorney therefore did not ever file a motion to assert a defense or mitigation due to mental illness in this case.

¶34 After trial, the defense counsel sought a mental evaluation by psychologist Dr. Vincent River to better understand Myers-Starks' mental illness due to his conduct at trial. Defense counsel then filed Dr. River's evaluation under seal *the day before* sentencing. He did not file a motion or notice to assert a mental illness defense, either for inability to form the requisite mental state (which must be asserted before trial), or inability to appreciate and conform his conduct to the law (which must be asserted before sentencing). He did not file a notice of unfitness to proceed, if that was his concern. He did not file a motion for a new trial. Instead, he just filed a mental evaluation from an evaluator not approved by DPHHS, and did not actually raise or assert the mental illness sentencing defense.

---

[2] Appellant's concern that the statutes will be construed as a "strict compliance" procedure to obtain DPHHS sentencing is noted. A defense counsel's late-developing awareness of a defendant's mental illness would likely qualify for good cause to assert a defense previously waived. But a wholesale abandonment of the notice procedures under the statute, as demonstrated here, is not to be encouraged.

¶35 Had defense counsel followed the notice and motion requirements of the statute, the State would have had an opportunity to review the evaluation, interview Dr. River as to his evaluation, and obtain its own evaluation by a mental health professional approved by DPHHS. Sections 46-14-204 through -206, MCA. The last-minute evaluation precluded the State from doing so. And because the defense never filed a motion to assert the mental illness defense available to it at sentencing (failure to "appreciate and conform"), the Court did not issue the orders appropriate to handling this new development.

¶36 The statute requires the defendant to assert this mental illness defense before the court orders an evaluation and considers this relevant information:

> Whenever a defendant is convicted . . . and *claims* at the time of the omnibus hearing . . . that at the time of the commission of the offense . . . the defendant was suffering from a mental disease or disorder or developmental disability that rendered the defendant unable to appreciate the criminality of the defendant's behavior or to conform the defendant's behavior to the requirements of law . . . .

Section 46-14-311(1), MCA (emphasis added).

¶37 The Opinion only partially cites our caselaw on this issue, seemingly to indicate the court must automatically know it must consider all relevant information on this issue. Not so. In every case cited where the District Court has an obligation to review all relevant mental illness evidence, it was because the defendant raised or asserted the mental illness defense, not because the court gathered in and considered mental illness information on its own volition. *State v. Raty*, 214 Mont. 114, 116, 692 P.2d 17, 18 (1984) ("[D]efendant notified the State of his intention to rely on the mental disease or defect defense. Raty was examined by a clinical team at Warm Springs State Hospital."); *State v. Gray*, 258 Mont.

424, 426, 853 P.2d 93, 94 (1993) ("Because of a long history of mental health problems, Gray filed a motion requesting an evaluation at the Montana State Hospital at Warm Springs pursuant to § 46-14-202, MCA."); *State v. Barrus*, 2025 MT 183, ¶ 20, 423 Mont. 391, 573 P.3d 1188 (The defendant "file[d] a notice of intent to rely on § 46-14-311, MCA, if convicted.").

¶38     Here, the defense counsel did not file any such notice, hence the conduct that fell below the standard of competence. And we can consider this as a record-based ineffective assistance claim, because the defense attorney informed the court at the sentencing hearing why he did not file the notice: he thought Montana's law was stupid and he didn't need to follow it.

> Mr. Starks is mentally ill, that is clear, and we don't even have an insanity defense in this state anymore. We are forced to argue this backwards law and I can't even -- I can't get an insanity defense, that's why I didn't argue it at trial even though my client is mentally ill. I didn't -- I can't argue it at trial. It doesn't make sense. It doesn't fit.
>
> We're one of only a couple states that have taken away that, so we put these guys in a box. There's -- the same box. The jail cell box. We're putting them in this box, but they don't fit there, and they shouldn't be there.
>
> .   .   .
>
> So, this has been dancing around in different forms and I know that County Attorney's not happy with me because I didn't argue mental health at trial and I'm arguing it at sentencing, well that actually is completely -- in my opinion, in my understanding of the law, completely okay. We -- you can bring it in a mental health evidence at trial or you can bring it in as a sentencing issue which I think is actually what the law is pushing us to do. They don't want insanity defense at trial, they want it just as a sentencing issue which I think is fundamentally unfair.

¶39 It doesn't matter that defense counsel thinks Montana's law is "backwards." It is the law, and it is his duty to understand it. Moreover, the law is not backwards. We reviewed it upon its passage and affirmed it upholds a defendant's constitutional rights. "For the foregoing reasons we hold that Montana's abolition of the insanity defense neither deprives a defendant of his Fourteenth Amendment right to due process nor violates the Eighth Amendment proscription against cruel and unusual punishment. There is no independent constitutional right to plead insanity." *State v. Korell*, 213 Mont. 316, 334, 690 P.2d 992, 1002 (1984).

¶40 The United States Supreme Court reviewed a similar statutory framework from the State of Kansas and also held it upholds a defendant's rights:

> The issue here is whether the Constitution's Due Process Clause forces Kansas to do so—otherwise said, whether that Clause compels the acquittal of any defendant who, because of mental illness, could not tell right from wrong when committing his crime. We hold that the Clause imposes no such requirement.

*Kahler v. Kansas*, 589 U.S. 271, 274, 140 S. Ct. 1021, 1024–25 (2020).

¶41 Montana's statutes permit a defendant to assert at trial that due to a mental illness he did not have the mental state to commit the charged crime. If convicted, the defendant has a right to assert at sentencing that due to a mental illness, he did not have the ability to appreciate the criminality of his conduct or to conform his action to the requirements of the law. The defendant must assert either of these defenses; the court does not sua sponte consider them absent a timely notice and assertion.

¶42    Mr. Myers-Starks was deprived of his right to assert a mental illness defense appropriate to sentencing.  The deprivation comes from his counsel's ineffectiveness.  I would remand for new sentencing on that basis.

/S/ CORY J. SWANSON